UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INESSA SLOOTSKIN, | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:03CV02016 (JCH) |
| | : | |
| v. | : | |
| | : | |
| JOHN BROWN ENGINEERING AND CONSTRUCTION, INC., n/k/a KVAERNER PROCESS, A DIVISION OF KVAERNER U.S., INC., | : | FEBRUARY 28, 2006 |
|     Defendant | : | |

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT [Dkt. Nos. 48 & 50]**

**I. INTRODUCTION**

The plaintiff, Inessa Slootskin, asserts an Age Discrimination in Employment Act (ADEA) claim against defendant John Brown Engineering and Construction, Inc., n/k/a Kvaerner Process, a division of Kvaerner U.S., Inc. ("John Brown"). Slootskin seeks several forms of relief, additional to those she recovered in a previous state action arising out of the same facts. She seeks attorney's fees and costs from the CHRO action and appeals as well as the present action; liquidated damages; damages to compensate for the negative tax effect of the lump-sum award by the CHRO; and pre- and post-judgment interest. Am. Compl. [Doc. No. 46].

John Brown moves for summary judgment on the grounds that (1) the statute of limitations bars Slootskin's claims; (2) res judicata, or claim preclusion, bars this litigation; and (3) the doctrine of laches bars Slootskin's claims. Slootskin moves for summary judgment as well, arguing that the undisputed facts show that she is entitled to summary judgment on all her claims.

1

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden lies on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004).  The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted); accord Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich,

963 F.2d at 523 (internal citation omitted).  Thus, "'[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.'" Id. (quoting Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991)); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992) ("Viewing the evidence in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is inappropriate.").  "'If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

When a motion for summary judgment is supported by sworn affidavits or other documentary evidence permitted by Rule 56, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading." Fed. R. Civ. P. 56(e); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment.  Id.  "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). Similarly, a party may not rely on conclusory statements or an

argument that the affidavits in support of the motion for summary judgment are not credible.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## III.  FACTS

The material facts of this case are not genuinely in dispute.  Slootskin is a former employee of John Brown.  John Brown terminated Slootskin's employment on June 5, 1992.  She subsequently filed a complaint with the CHRO and the EEOC alleging that John Brown unlawfully discriminated against her on the basis of age when it discharged her.  On February 19, 1999, the CHRO issued a "Final Decision," finding that Slootskin had a proved a claim of age discrimination against John Brown and awarding back pay and interest.  Def.'s Mem. Supp. Mot. Summ. J. Ex. G [Doc. No. 49].  On April 6, 1999, the CHRO issued an Amended Order of Final Decision, modifiying its calculation of interest on Slootskin's back pay.  Id.  On November 19, 1999, the EEOC sent Slootskin a Determination letter, stating that the matter had been "successfully settled" and that "[t]his concludes the Commission's processing of the charge subject to the performance by the Respondent of the promises and representations contained in the order or agreement."  Id. Ex. L.   This letter did not discuss the possibility that Slootskin might pursue any suit against John Brown in federal court.  Id.

On November 24, 1999, Slootskin's counsel responded with a letter stating that the charge of age discrimination had not "been finally resolved" because an appeal was pending before the Connecticut Superior Court  and requesting that the EEOC "modify the recent determination to keep this matter open before the Commission pending a final determination in Connecticut."  Id. Ex. M.  The record contains no evidence that Slootskin or her counsel received a response to this letter, and the EEOC did not

4

revoke its determination letter within ninety days of issuance.

Slootskin's appeal was successful in the Connecticut Superior Court, see id. Ex. I., and the Appellate Court affirmed in part and reversed in part the Superior Court's decision, again remanding the case to the CHRO, see id. Ex. J.  The CHRO issued a "Final decision on remand" on April 29, 2003, granting Slootskin a damage award comprised of back pay, front pay, pre- and post-judgment interest, and fringe benefits. Id. Ex. K.  John Brown paid the damage award.

Slootskin's counsel sent the EEOC a letter dated May 30, 2003, notifying it that the CHRO had reached a final decision in her favor and that the appeal period had elapsed.  Def.'s Mem. Supp. Mot. Summ. J. Ex. A at Internal Ex. J.  The letter also requested that the EEOC adopt the new CHRO decision as its own determination.  Id.

Slootskin commenced the instant ADEA action on November 24, 2003.  On November 22, 2004, the EEOC wrote a letter to Slootskin and John Brown stating that its November 1999 Determination was "rescinded" because it had been "based on incorrect information provided by the Connecticut Commission on Human Rights and Opportunities that the charge had been successfully settled."  Def.'s Mem. Supp. Mot. Summ. J. Ex. O.

The present action rises out of the same facts as the CHRO action.

## III. DISCUSSION

### A. Statute of Limitations

John Brown argues that Slootskin filed the present case after the statute of limitations had run, because she filed it more than 90 days after receipt of the

5

November 1999 Determination letter from the EEOC. The ADEA provides,

> If a charge filed with the [Equal Employment Opportunity] Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person . . . against the respondent named in the charge within 90 days after the date of the receipt of such notice.

29 U.S.C. § 626(e). In the context of a similar time limitation on filing Title VII claims, the Second Circuit has held that, "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984) (internal citation omitted).

### 1. Defects in Notice

Slootskin concedes that she commenced the present action more than ninety days after receiving the November 19, 1999 Determination letter, but she argues that the statute of limitations should be tolled on equitable grounds because it did not alert Slootskin to her right to sue John Brown in federal court or the time limitation on such suit. The Second Circuit described the ADEA statute of limitations as running from a plaintiff's receipt of a "right-to-sue" letter. Vernon v. Cassadaga Valley Central Sch. Dist., 49 F.3d 886, 887 (2d Cir. 1995). However, the plain language of the statute does not require that the notice that the EEOC has terminated proceedings include notice of the complainant's right to file a civil suit. 29 U.S.C. § 626(e); see Bush v. Quebecor Printing (USA) Corp., 130 F.Supp.2d 301, 306 (D.Mass. 2001) (considering a complainant's argument that the EEOC, acting under a mistaken assumption that the complainant had already filed a federal ADEA suit, sent complainant a letter saying that

it would stop investigating but failing to mention the right to sue, and holding that the letter "'otherwise terminated' EEOC proceedings for purposes of section 626(e)."). Therefore, as a threshold matter, the language of the November 19, 1999 Determination letter, on its face, provided sufficient notice of termination to start the running of the limitation period.

Indeed, Slootskin confines her argument on this issue to one for equitable tolling of the limitations period. The Second Circuit has held that equitable estoppel may relieve a plaintiff from the ninety-day rule only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal citation and quotation marks omitted)). The Second Circuit permits courts to apply the doctrine of equitable tolling in situations in which a plaintiff "received inadequate notice" of the filing deadline. South v. Saab Cars USA, Inc., 28 F.3d 9, 11-12 (2d Cir. 1994) (citing Gates v. Georgia-Pacific Corp., 492 F.2d 292, 295 (9th Cir. 1974) (applying equitable tolling of Title VII limitations period where EEOC sent complainant letter asserting lack of jurisdiction but failed to send a right to sue letter until more than a month later); see Browning v. AT&T Paradyne, 120 F.3d 222, 225-27 (11th Cir. 1997) (tolling Title VII statute of limitations for eighteen days on equitable grounds where EEOC letter stated that complainant's request to withdraw EEOC complaints was granted, without informing of right to sue, and where EEOC investigator erroneously told complainant's lawyer that the old, pre-1991 statute of limitations would apply); Bush, 130 F.Supp.2d at 305-07 (applying equitable tolling where erroneous termination letter failed to mention right to sue). However, the Second Circuit has also held that, in

determining whether equitable tolling is appropriate, a district court must consider whether the person seeking application of that doctrine "has acted with reasonable diligence during the time period she seeks to have tolled." Zerilli-Edelglass, 333 F.3d at 80. A failure by a plaintiff, or her attorney, to act diligently "is insufficient to justify application of an equitable toll." South, 28 F.3d at 12 (citing Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (per curiam) (finding pro se filing of a "right to sue" letter received from EEOC, rather than a complaint, insufficient to toll limitations period in Title VII case)); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (holding that equitable tolling of Title VII limitations period was improper when plaintiff's attorney was out of the office when EEOC notice arrived and attorney filed complaint within thirty days from actually seeing the notice and stating that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.").

In light of this statement by the Second Circuit, the court holds that the EEOC's failure to mention Slootskin's right to sue in its November 1999 letter was insufficient, in and of itself, to toll the statute of limitations. In November 1999, Slootskin was represented by the same counsel who currently represents her. Unlike that in Browning, the present failure to file a federal civil lawsuit within ninety days of the original determination letter did not result from any excusable confusion as to the length of the statutory limitation period. The EEOC did not misinform Slootskin or her counsel. Cf. Zerilli-Edelglass, 333 F.3d at 80 (stating that one situation in which equitable tolling is appropriate is where "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant"). If he was not already aware of the statutory limitation period for ADEA claims, Slootskin's counsel could have checked the statutory

language upon receipt of the 1999 Determination letter, and could have filed a federal complaint to preserve her claims. Slootskin does not claim that her decision not to file this suit within ninety days from the November 1999 Determination letter resulted from an actual lack of awareness as to her right to sue in federal court, nor as to the length of the statutory time limitation on this right. Insofar as Bush may be read to hold that equitable tolling was appropriate because of a lack of notice of the right to sue and statutory limitation period, the court finds that the Second Circuit case law on equitable tolling compels a different result in this case.

### 2. Erroneous Termination

Slootskin next argues that the failure to file this action within ninety days of receipt of the November 1999 Determination letter should not bar the present action because it was issued in error and later rescinded.

As Slootskin argues, agencies have an inherent right to reconsider their own decisions in the absence of specific statutory limitations. Macktal v. Chao, 286 F.3d 822 (2d Cir. 2002). This authority requires no affirmative statutory or regulatory authorization. Dun & Bradstreet Corp. Fdn. v. USPS, 946 F.2d 189, 193 (2d Cir. 1991). The regulations covering ADEA procedures do not address the issue of whether the EEOC may reconsider its decisions to terminate proceedings. See generally 29 C.F.R. Part 1626; see also McCray v. Corry Mfg. Co., 61 F.3d 224, 228 (3d Cir. 1995) (finding that, although the EEOC has amended regulations governing reconsideration of Title VII claims to apply to the Americans with Disabilities Act ("ADA"), no counterpart regulations govern ADEA determinations); cf. 29 C.F.R. §§ 1601.19 (EEOC procedures for reconsideration of final determinations of "no reasonable cause" in Title VII and ADA

9

cases), 1601.21 (EEOC procedures for reconsideration of final determinations of "reasonable cause" in Title VII and ADA cases).  Although some courts have concluded that the absence of applicable regulations means the EEOC lacks authority to reconsider, the court agrees with Slootskin that the Second Circuit case law cited above compels the opposite conclusion.

The harder question is whether this authority to reconsider leads to tolling of the statutory limitation period.  Both the Third Circuit and the Southern District of New York have applied the procedural rules in 29 C.F.R. sections 1601.19 and 1601.21 to determine if a particular reconsideration of an ADEA determination, if indeed it was authorized, could toll the statute of limitations.  See McCray, 61 F.3d at 228-29; Vollinger v. Merrill Lynch & Co., 198 F.Supp.2d 433, 440 (S.D.N.Y. 2002) (citing McCray).  These regulations state that issuance of a notice of intent to reconsider by the EEOC will "revoke the charging party's right to bring suit within 90 days" only if it is issued within 90 days of receipt of the original determination.  See §§ 1601.19(b), 1601.21(b)(1).[1]  Although the court has already found that these regulations do not control the EEOC's authority to reconsider decisions on ADEA claims, and although it recognizes that these regulations do not specifically discuss terminations due to settlement, the court has not found any other authority for whether and when the EEOC's reconsideration of such decisions tolls the ninety day statute of limitations.  It therefore agrees with McCray and Vollinger that it is appropriate to apply these rules in

---

[1] The EEOC considers a right-to-sue notice a prerequisite to civil Title VII suit, whereas ADEA claimants can bring a civil action beginning sixty days after filing an EEOC charge, regardless of whether they have received such a notice.  EEOC Compliance Manual §§ 4.1(a)(1); 6.1 (Def.'s Reply Mem. Supp. Summ. J., Ex. A).

determining whether a particular reconsideration tolls the statute of limitations. Although Slootskin's counsel wrote to the EEOC on November 24, 1999, to inform it that the case was still pending on appeal, the EEOC did not issue a notice of intent to reconsider, nor indicate any intent to reconsider its decision, within the ninety day period. It did not issue a letter announcing it had rescinded its Determination until approximately five years after the initial Determination. The reconsideration therefore would not toll the statute of limitations.

The court notes that the plaintiff could have argued for equitable tolling of the statute of limitations based on an alternative ground based on a defect in notice of the right to sue, that is, the erroneous nature of the initial Determination letter. The court examined this issue, albeit without the benefit of briefing by the parties. It concludes that equitable tolling would not be appropriate on that basis either. In order to apply equitable tolling, the Second Circuit requires this court to consider "whether the person seeking application of the equitable tolling doctrine . . . has acted with reasonable diligence during the time period she seeks to have tolled." Zerilli-Edelglass, 333 F.3d 74, 80 (2d Cir. 2003). Lack of due diligence by the plaintiff's attorney does not permit a court to impose equitable tolling. See South, 28 F.3d at 12 (citing Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (per curiam)); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). The EEOC did not respond to the letter from Slootskin's counsel requesting reconsideration of its 1999 Determination letter any time within ninety days of that Determination letter and made no other communication during this period stating that its determination letter was issued in error. In light of these undisputed facts, the decision of Slootskin or her counsel not to file a federal claim

11

within 90 days of the 1999 letter does not qualify as diligence.

Slootskin's claim is barred, and the court does not reach the parties' remaining arguments.

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment [**Doc. No. 48**] is GRANTED, and the plaintiff's Motion for Summary Judgment [**Doc. No. 50**] is DENIED.  The clerk is instructed to close the case.

## SO ORDERED.

Dated at Bridgeport, Connecticut this 28th day of February, 2006.


                        /s/ Janet C. Hall
                        Janet C. Hall
                        United States District Judge